UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CURLY H. YOUNG,
    *Plaintiff*,

v.

PAROLE OFFICER PEARSON, et al.,
    *Defendants.*

No. 3:24cv1028 (OAW)

## INITIAL REVIEW ORDER

At all times relevant to this complaint, the self-represented plaintiff, Curly H. Young, was a special parolee[1] under the supervision of the Board of Pardons and Paroles ("BOPP"), which is an office of the Department of Correction ("DOC").[2] Plaintiff files this action under 42 U.S.C. § 1983 against Connecticut parole officers Pearson, McClay, and Supervisor Matthew Wilkey. *See generally* ECF No. 21. He asserts violations of his constitutional rights under the Fourteenth, First, and Eighth Amendments.[3] He sues all Defendants in their individual and official capacities.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss a complaint, or any portion thereof, which is frivolous or malicious, which fails to

---

[1] Special parole is a form of supervision which can be ordered by a sentencing judge to follow a term of imprisonment greater than two years in length. *See generally* Conn. Gen. Stat. § 54-125e.

[2] It appears that Mr. Young has been released from DOC custody, as a search of DOC's "Offender Information Search," available at https://www.ctinmateinfo.state.ct.us/searchop.asp, returns no results for "Curly Young." Mr. Young is reminded to please update the court with current contact information. Failure to do so may result in dismissal of this action.

[3] Plaintiff also asserts state law claims, which the court will not review here. If any federal law claims survive initial review, then the validity of any state law claims may be addressed in the usual course by way of a motion to dismiss or a motion for summary judgment.

state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).  Accordingly, the court has reviewed all factual allegations in the amended complaint and has conducted an initial review of the same.

I. **BACKGROUND**

The court does not include herein all of the allegations from the amended complaint but summarizes the facts to provide context for this initial review.

In September 2023, Plaintiff was on special parole, living in a residential community center (Open Hearth Halfway House) and reporting to Defendant McClay for supervision.  ECF No. 21 ¶¶ 4–6.  By early October 2023, he had transitioned to supportive housing at the Chrysalis Center. *Id.* ¶ 5; ECF No. 21-1 at 2.  There, Plaintiff was accused of having an overnight guest without permission, and on January 3, 2024, was removed from the Chrysalis Center and was placed at the O'Connor Halfway House ("O'Connor House") in Hartford, Connecticut.  ECF No. 21 ¶ 8, 14; ECF No. 21-1 at 2.  However, in December 2023, while Plaintiff resided at the Chrysalis Center, Defendant McClay conducted a random search of Plaintiff's residence and discovered what he believed to be either children's or women's underwear. ECF No. 21 ¶¶ 7,9.  Plaintiff was "forced" to inform Defendant McClay that he is bisexual and likes to wear women's clothing, including women's undergarments.  *Id.* ¶ 10.

At the O'Connor House, Plaintiff reported to Defendant Pearson for supervision. *Id.* ¶ 17.  Plaintiff tested positive for cocaine on January 10th, 11th, and 12th of 2024, which

he attributed to use on December 31 (almost two weeks earlier than the latest result). ECF No. 21-1 at 2.  He asserts that the amount of cocaine in his system was waning.  *Id.*

On February 6, 2024, while purporting to show Defendant Pearson photographs of Plaintiff with whom he claimed to be a celebrity relative, Plaintiff swiped past a picture of his penis taken in the bathroom of the halfway house.  ECF No. 21-1 at 2.  By that time, Plaintiff had already sent Defendant Pearson the celebrity photographs (on February 1), and had shown the photos of his genitalia to two female staff members (on February 1st and 6th) who had then instructed him to remove the penis photos from his phone.  *Id.*

On February 9, 2024, Plaintiff was given a community pass from 6:45am to 6:15pm so that he could attend work, but he did not attend work that day and instead used cocaine and absconded from the halfway house (never returning).  *Id.* at 2–3.  However, Plaintiff asserts that he raised complaints to Defendant Pearson that O'Connor House staff were committing errors on his work passes such that he could not attend his job, and that staff was disrespectful and unprofessional.  ECF No. 21 ¶¶ 19–20.  He asserts that he sent Defendant Pearson several text messages in January and February 2024, which resulted in instruction that he should never call or text Defendant Pearson again.  *Id.* ¶21–23.  Plaintiff attributes absconding from the halfway house for two months to problems with its staff and that text message from Defendant Pearson.  *Id.* ¶ 24.  It appears he was remanded to custody in April 2024 on unrelated charges. ECF No. 21-1 at 2.  Ultimately, those charges were not prosecuted, but Plaintiff was imprisoned for absconding.

On June 3, 2024, Plaintiff received a letter (also referred to as "the Report") from DOC, in which Defendant Pearson listed ways in which Plaintiff had not complied with special parole, such as related to employment, drug use, unapproved overnight guests,

3

and "questionable moments" of possessing women's or children's underwear and recommended that Plaintiff be considered for sex offender evaluation, *id.* at 2, although he had never questioned Plaintiff about possessing female underwear and only relied on notes from Defendant McClay. ECF No. 21 ¶¶ 26–30.  Defendant Pearson recommended Plaintiff's parole be revoked for at least one year.  ECF No. 21-1 at 4.  Defendant Wilkey signed off on this Report.  *Id.* at 5.

Plaintiff is not a sex offender and has not been charged with a sex crime.  ECF No. 21 ¶ 31.  DOC has advised Plaintiff that a sex offender evaluation cannot be ordered simply because of an individual's possession of female underwear.  *Id.* ¶ 32.

Plaintiff claims that "[s]omehow through DOC employees," information from the Report has been made public.  *Id.* ¶ 65.  He has lost friendships, his relationship with his son is strained, and he has been subjected to name-calling.  *Id.* ¶¶ 63–64. He maintains Defendant Pearson intentionally discriminated against him.  *Id.* ¶ 36. In addition, he asserts that Defendants have deprived him of the opportunity to be released on early parole.  *Id.* ¶ 38.

## II.  DISCUSSION

Plaintiff seeks damages from each Defendant for violation of his constitutional rights under 42 U.S.C. § 1983.  Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999).

4

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991)). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (holding that a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

A. **Eighth Amendment Deliberate Indifference**

Plaintiff claims that information about him in the Report has been disseminated to the inmate population and that he is now subject to harassment from other inmates and to discriminatory conduct from DOC staff. The court construes these allegations to assert an Eighth Amendment deliberate indifference claim.[4]

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991). Although the Constitution does not require comfortable prison conditions, the Eighth Amendment imposes certain duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care," and to "take reasonable measures to guarantee the

---

[4] Because Plaintiff is a special parolee, the court analyzes his deliberate indifference claim under the Eighth Amendment instead of the Fourteenth Amendment. *See Shabazz v. Sharr*, No. 3:19-CV-1233 (VLB), 2020 WL 646171, at *3 (D. Conn. Feb. 11, 2020) ("[P]ersons on special parole remain under the custody of the Department of Correction and, therefore, [their] claims are cognizable under the Eighth, not the Fourteenth, Amendment.").

5

safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

To state an Eighth Amendment deliberate indifference claim, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a sufficiently serious deprivation, such as the denial of life's necessities or a "substantial risk of serious harm." *Id.* at 834.  To meet the subjective element, an inmate must allege that the prison officials possessed culpable intent, that is, that the officials knew that the inmate faced a substantial risk to his health or safety and that officials disregarded that risk by failing to take corrective action.  *Id.* at 834, 837.  Allegations of "mere negligence" are insufficient.  *Id.* at 835.  Rather, the subjective element requires a plaintiff to allege that prison officials act with "a mental state equivalent to subjective recklessness, as the term is used in criminal law."  *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006).

As to the objective element, courts within this circuit have recognized that labeling an inmate in certain ways (such as a snitch, homosexual, or child molester) can endanger an inmate in violation of the Eighth Amendment, but an inmate must show either that this conduct led to physical harm or that it "gave rise to an excessive risk to his safety or imminent harm."  *Lawrence v. Agramonte*, 2020 WL 2307642, at *5 (D. Conn. 2020)). The only possible physical harm Plaintiff has alleged is depression, and it does not appear that he is in danger of anything other than name-calling as a result of information from the Report became public.  Accordingly, the court finds that Plaintiff has failed to state a deliberate indifference claim, and thus any such claim must be dismissed.

## B. First Amendment Freedom of Expression/Retaliation

Plaintiff alleges that Defendants have censored his lifestyle and his use of women's clothing as a means of self-expression. He further asserts that Defendant Pearson's text messages and the Report clearly show retaliation against him.

The First Amendment provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend I. The Free Speech Clause has been incorporated against the States through the Fourteenth Amendment. *Gitlow v. New York*, 268 U.S. 652, 666 (1925). "The First Amendment generally prevents government from 'proscribing speech . . . because [it] disapprov[es] of the ideas expressed,' or mandating speech because it seeks to promote particular views." *Brokamp v. James*, 66 F.4th 374, 390–91 (2d Cir. 2023) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992)) (internal citation omitted) (alterations in original).

To plead a First Amendment retaliation claim, an inmate must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (*Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). The United States Court of Appeals for the Second Circuit has "instructed district courts to' approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir.2003)).

It is not clear what specific conduct allegedly censored Plaintiff's self-expression. It is nowhere alleged that Plaintiff's undergarments were confiscated, or even that he was disciplined for his possession of them. Plaintiff points to the Report as proof of retaliation, but the court can find no constitutional violation in the fact that the Report made record of an unusual occurrence and recommended follow-up on the same. This is particularly true where (1) the recommendation was only that Plaintiff "be considered" for a sex offender evaluation, and (2) Plaintiff also was noted to have repeatedly shown staff at the halfway house photographs of his genitalia, despite being instructed to delete those photographs. ECF No. 21-1 at 2. The facts presented simply cannot support the assertion that Defendants took any action because they disapproved of Plaintiff's lifestyle.

Similarly, the court cannot conclude that Defendant Pearson's allegedly irate text message qualifies as an adverse action, particularly where it appears that Plaintiff and Defendant Pearson did communicate via telephone and text message thereafter. *Id.* at 2–3. Moreover, there is no apparent nexus between this reaction, which apparently was in response to several texts Plaintiff had sent about work passes, and Plaintiff's choice of clothing and/or lifestyle.

Finally, it is not clear that any of the Defendants had anything to do with Plaintiff after he was reincarcerated, or even that they had any contact with inmates in the facilities where Plaintiff was housed such that they could be responsible for revealing the contents of the Report. The court appreciates that it may be difficult to uncover correctional officers' malfeasance absent discovery, but there must be something in the complaint that allows at least the inference that the named defendants are responsible for the adverse action alleged. Here, Plaintiff's only allegation is that the information from the Report was

made public "[s]omehow" through DOC employees. This is not enough even to infer that the named defendants are culpable.

Accordingly, the court can find no cognizable First Amendment claim in the complaint.

### D. Fourteenth Amendment Due Process

The Fourteenth Amendment's Due Process Clause prohibits the States from "depriv[ing] any person of life, liberty, or property, without due process of law . . . ." U.S Const. amend. XIV. While procedural due process prohibits deprivations of life, liberty, or property without constitutionally adequate procedures, substantive due process protects certain rights "no matter the process employed by the State." *Case v. Anderson*, No. 16 Civ. 983 (NSR), 2017 WL 3701863, at *14 (S.D.N.Y. Aug. 25, 2017) (citing *Madden v. City of Meriden*, 602 F. Supp. 1160, 1166 (D. Conn. 1985)).

#### 1. *Substantive Due Process: Right to Privacy*

The Supreme Court of the United States has recognized that there exists a Fourteenth Amendment right to privacy that protects an individual's "interest in avoiding disclosure of personal matters . . . ." *Whalen v. Roe,* 429 U.S. 589, 599 & n. 23(1977); *Powell v. Schriver,* 175 F.3d 107, 110 (2d Cir.1999) (finding sexuality and gender identity to be "personal matters" to which one has a privacy interest). However, "prison officials can impinge on that right only to the extent that their actions are 'reasonably related to legitimate penological interests.'" *Powell*, 175 F.3d at112 (quoting *Turner v. Safley*, 482 U.S. 78, 95 (1987)).

Here, Plaintiff indicates that he was "forced" to inform Defendant McClay about his sexual orientation to defend against his accusation of being a sex offender, and that

Defendants later made a Report that included the fact that Plaintiff had possessed female underwear and the recommendation of a sex offender evaluation, which information somehow was made public.

The court cannot find that Plaintiff was forced to disclose anything about his sexuality, as being bisexual is not relevant to the question of whether possession of women's or children's underwear is cause for concern. Further, Plaintiff concedes that he was not (nor could he have been) sent for a sex offender evaluation based on mere possession of the underwear, regardless of his sexuality, so he need not have disclosed his sexuality or any other defense for possessing the undergarments (which, for the record, he asserts were women's size small underpants and not those meant for a child). His sexuality was neither linked to predation nor required as a defense thereto. And, as discussed supra, the court can find no impropriety in Defendant Pearson's questions to Plaintiff upon discovery of the same in Plaintiff's possession.

And while the court does find that disclosure to other inmates of Plaintiff's sexuality and/or predilection for women's clothing could support a claim for violation of his right to privacy, again, there is nothing in the complaint showing that Defendants were at all involved in that disclosure. The fact that they contributed to the Report is insufficient to raise an inference that they are responsible for any injury to Plaintiff.

Accordingly, any claim predicated upon an alleged violation of Plaintiff's right to privacy must be dismissed.

### 2. *Procedural Due Process: Fourteenth Amendment Stigma-Plus*

The court also considers whether Plaintiff may assert a procedural due process violation based on a stigma-plus theory against Defendants.

Generally speaking, in determining whether an incarcerated individual has stated a procedural due process claim, a court "first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). A plaintiff may address the first question by showing injury to their reputation in what is referred to as a "stigma-plus" claim. *Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006) ("'Stigma plus' refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' . . . (the plus), without adequate process.'") (quoting *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir.2003)) (alteration in original). To prevail on a "stigma-plus" claim, a plaintiff must allege two distinct elements: "(1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (quoting *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir.2001)). The "plus" element must involve "specific and adverse action [by the state defendant] clearly restricting the plaintiff's liberty . . . ." *Velez v. Levy*, 401 F.3d 75, 87–88 (2d Cir. 2005). "This state-imposed alteration of status or burden must be 'in addition to the stigmatizing statement.'" *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (quoting *Sadallah*, 383 F.3d at 38). That is to say, the "deleterious effects [flowing] directly from a sullied reputation," do not satisfy the "plus" element. *Sadallah*, 383 F.3d at 38 (quoting *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994)). And even if a plaintiff can satisfy the stigma-plus

11

standard, they also must demonstrate an absence of due process of law. 459 F.3d at 213. "Stated differently, the availability of adequate process defeats a stigma-plus claim." *Id.*

Here, again, the court can find no offensive utterance in the Report itself. Defendants had a strong penological interest in reporting behavior that could indicate a need for specific treatment. And while disclosure of the contents to the Report outside DOC staff might satisfy the "stigma" element, Plaintiff also has not adequately supported his assertion that the contents of the Report prevented him from being eligible for early parole, thereby failing to satisfy the "plus" element. It is not clear how anything in the Report (and the possession of women's underwear in particular, as opposed to the numerous other transgressions noted therein) caused anything more than Plaintiff's reincarceration. The Report apparently did not result even in the recommended sex offender evaluation. *Compare Knight v. Semple*, No. 3:18-CV-703 (SRU), 2020 WL 1914927, at *3 (D. Conn. Apr. 20, 2020) (finding an inmate had satisfied the stigma-plus elements where he had actually been identified as a sex offender). And finally, there is no description of any process Plaintiff received in relation to his eligibility for parole.

Accordingly, Plaintiff has failed to state any Fourteenth Amendment procedural due process claim.

### E.     **Fourteenth Amendment Equal Protection**

Plaintiff alleges he was subjected to discriminatory treatment and has been treated less favorably than similarly-situated individuals in violation of the Fourteenth Amendment's Equal Protection Clause.

To state an equal protection claim, a plaintiff must allege facts showing: (1) that they were treated differently than similarly-situated individuals and (2) that the

discriminatory or different treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)). A plaintiff may do this by presenting evidence of "purposeful discrimination directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citation omitted). When a suspect classification is not at issue, a plaintiff may bring a "class of one" equal protection claim by alleging "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff does not identify any comparators such that the court could construe the complaint to allege a class-of-one claim. And while it is clear that Plaintiff has sufficiently alleged membership in a suspect class, *see LeTray v. City of Watertown*, No. 520CV1194FJSTWD, 2024 WL 1107903, at *7 (N.D.N.Y. Feb. 22, 2024) (noting court cases finding transgender status or homosexual status warrant heightened scrutiny) (citing *Bostock v. Clayton County*, 590 U.S. 644, 660 (2020) ("it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex")), the court cannot find any discriminatory conduct. Thus, the court must dismiss any equal protection claim.

### III.    ORDERS

Accordingly, the court enters the following orders:

(1) The amended complaint, ECF No. 21, is dismissed without prejudice.

(2) Plaintiff shall file a notice with the Clerk of Court updating his address of record on or before **November 26, 2025.** Failure to do so will result in this dismissal converting to one with prejudice. If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c) provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he must indicate all of the case numbers in the notification of change of address.  Plaintiff must also notify the defendants or defense counsel of his new address.

(3) Plaintiff may amend his complaint one final time on or before **November 26, 2025.** Failure to do so will result in this dismissal converting to one with prejudice.

(4) Plaintiff shall utilize the Prisoner Electronic Filing Program when filing documents with the court.  He is advised that the Program may be used only to file documents with the court.  As discovery requests are not filed with the court, the parties must serve discovery requests on each other by regular mail.

**IT IS SO ORDERED** at Hartford, Connecticut, this 31st day of October, 2025.

                                                            /s/
                                      OMAR A. WILLIAMS
                                      UNITED STATES DISTRICT JUDGE